IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02082-SBP

R.L.M,

    Plaintiff,

v.

MARTIN J. O'MALLEY,[1] Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER

**Susan Prose, United States Magistrate Judge**

This civil action is before the court pursuant to Title II, 42 U.S.C. §§ 401, *et. seq.*, and Title XVI, 42 U.S.C. § 1381, *et seq.,* of the Social Security Act (the "Act"), for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff[2] R.L.M.'s applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After consideration of the briefs and the administrative record, and for the reasons set forth in this order, the Commissioner's decision is AFFIRMED as follows.

## BACKGROUND

Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB and SSI applications filed on February 11, 2020, in which she claimed that she was disabled beginning

---

[1] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[2] This Opinion and Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2(b).

on July 2, 2015. ECF No. 8-5 at 286, 290.[3] An Administrative Law Judge ("ALJ") held an evidentiary hearing, ECF No. 8-2 at 13-39, during which Plaintiff amended her disability onset date to May 25, 2018. *Id.* at 19. The ALJ thereafter issued a ruling on February 15, 2022, denying Plaintiff's DIB and SSI applications. ECF No. 8-3 at 138-56. The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's decision, rendering it final on June 14, 2022. *Id.* at 157-62. Plaintiff timely filed her complaint with this court seeking review of the Commissioner's final decision. EFC No. 1. All parties consented to the jurisdiction of a magistrate judge, ECF No. 9, and jurisdiction is proper pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## FACTUAL BACKGROUND

Plaintiff was 42 years old on her amended disability onset date (May 25, 2018), and 49 years old on the date of the ALJ's decision (February 15, 2022). ECF No. 8-3 at 150. ECF No. 8-2 at 19. She completed high school and medical assistant training. ECF No. 8-6 at 324, 390. ECF No. 8-9 at 1065. Plaintiff worked as a medical assistant for 16 years. *Id.* In her applications, Plaintiff asserted that she was disabled due to various physical impairments and, as relevant here, her mental impairments of depression, anxiety, and issues with focus and concentration. ECF No. 8-6 at 323.

## ALJ's DECISION

In her final decision, the ALJ applied the five-step sequential process for determining whether an individual is disabled outlined in 20 C.F.R. § 404.1520(a) and § 416.920(a).[4] At step

---

[3] When citing to the Administrative Record, the court utilizes the docket number assigned by the court's Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

[4] "The Commissioner has established a five-step sequential evaluation process for determining

2

one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 25, 2018, her amended alleged onset date. ECF No. 8-3 at 143-44. At step two, the ALJ found that Plaintiff had severe physical impairments and, as relevant here, the severe mental impairments of generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), and major depressive disorder. *Id.* at 144. The ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the disability regulations deemed to be so severe as to preclude substantial gainful employment at step three. *Id.*

The ALJ next determined that Plaintiff had the residual functional capacity (the "RFC") to perform a reduced range of "light" work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b),[5]

---

whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
> 2. The ALJ must then determine whether the claimed impairment is 'severe.' A 'severe impairment' must significantly limit the claimant's physical or mental ability to do basic work activities.
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity."

*Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *2 (D. Colo. Jan. 12, 2011); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (setting forth five-step sequential evaluation process).
[5] The regulations define "light work" as that which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have

with the following mental limitations:

> [s]he can perform work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time of 30 days and has a reasoning level of no higher than two. She can sustain ordinary routines, understand, carry out, and remember simple instructions, and use judgment in making simple work-related decisions. She can attend and concentrate for two-hour periods totaling a normal eight-hour workday with usual work breaks. She can maintain persistence and pace. She can respond appropriately to supervision, coworkers, and usual work situations. She can tolerate occasional interaction with coworkers but should not have to engage in any teamwork or collaboration with them. She can tolerate brief, meaning lasting no more than 10 minutes at one time, interaction with the general public for up to 10% of an average workday. She can adapt to frequent changes in a routine work setting.

*Id.* at 146.

At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work as a medical assistant. *Id.* at 150. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff was capable of performing, such as collator operator, router, and office helper. *Id.* at 151. The ALJ therefore concluded at step five that Plaintiff was not disabled, as defined by the Social Security Act, from her amended onset date of May 25, 2018, through the date of the ALJ's decision on February 15, 2022. *Id.*

---

the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

Here, with regard to Plaintiff's physical limitations, the ALJ determined that Plaintiff "can stand and/or walk for four hours total in an eight-hour workday. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs; kneel, crouch, and crawl. She can frequently stoop." ECF No. 8-3 at 146.

4

## STANDARD OF REVIEW

In reviewing the final decision, this court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—**such relevant evidence as a reasonable mind might accept as adequate to support a conclusion**.

*Id.* at 102-03 (cleaned up, emphasis added); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133). This court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (explaining that the court may not "displace the Commissioner's choice between two fairly conflicting views").

## ANALYSIS

On appeal, Plaintiff asserts one claim of error. Specifically, she contends that the ALJ erred by improperly analyzing the medical opinion of the consultive examiner, Stuart L. Kutz, Ph.D., when determining her mental limitations on her ability to work.

In assessing the medical opinion evidence, the ALJ first addressed the prior administrative findings from the state agency psychological consultants—Dr. Anne Naplin, Ph.D., dated November 16, 2020, ECF No. 8-3 at 42-63, 66-87, and Dr. Ellen Ryan, M.D., dated May 14, 2021, *id.* at 90-112, 115-37. Drs. Naplin and Ryan both opined, after reviewing the medical records, that Plaintiff's mental impairments resulted in: 1) mild limitation in the area of understanding, remembering, or applying information, and 2) moderate limitation in the areas of: interacting with others; concentrating, persisting, and maintaining pace; and in adapting or managing oneself. *Id.* at 149. The ALJ found Drs. Naplin's and Ryan's opinions to be "persuasive" based on the support provided for those opinions and the consistency of the opinions with the medical evidence of record. *Id.* Plaintiff does not challenge this determination.

The ALJ then went on to find that the opinion of the consultative examiner, Stuart Kutz, Jr., Ph.D., was "not persuasive." *Id.* Dr. Kutz performed a detailed mental status examination of Plaintiff on October 27, 2020, at the request of the Commissioner. EFC 8-9 at 1062-68. Dr. Kutz concluded that Plaintiff's understanding and memory were not impaired, but that "relative to a competitive work setting throughout an eight-hour day and full time, not knowing the impact of any substance usage, her attention/concentration, persistence, pace and task completion, and social adaptation would be markedly impaired." *Id.* at 1067.

In finding Dr. Kutz's opinion unpersuasive, the ALJ stated:

> According to Dr. Kutz, the claimant would have marked impairment in the areas of

> attention/concentration, persistence and pace, task completion, and social adaptation. He indicated the claimant's understanding and memory did not show any clear impairment. Dr. Kutz indicated that the claimant did not seem stable and the impact of her substance usage on her mood was unclear.
>
> This opinion is not supported by Dr. Kutz's examination. He observed the claimant's attention and concentration were mildly to moderately impaired, which is inconsistent with his opinion that the claimant has marked work-related limitations in those areas.
>
> This opinion is also inconsistent with the medical evidence of record. Specifically, treatment has been limited and the claimant has had normal findings on mental status examinations, including, normal mood, affect, behavior, thought content, and memory.

*Id.* at 149 (paragraph breaks added; citing ECF No. 8-7 at 411, 503; ECF No. 8-9 at 1127, 1140, 1146, 1186). The ALJ thus found Dr. Kutz's opinion to be unpersuasive because of the lack of support for that opinion in his examination report and because it was inconsistent with medical evidence in the record.

Plaintiff argues that the ALJ erred in finding Dr. Kutz's opinion unpersuasive. For the reasons that follow, the court respectfully disagrees.

For claims filed on or after March 27, 2017—as is the case here because Plaintiff filed her applications in February of 2020—the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from a claimant's own medical sources. 20 C.F.R. §§ 404.1520c, 416.920c.[6] Instead, under the applicable regulations, the ALJ will consider the persuasiveness of each medical source opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, the frequency of examinations,

---

[6] By contrast, "for claims filed *before* March 27, 2017, the Commissioner 'gives more weight to medical opinions from claimants' treating sources." *S.L. v. Comm'r*, No. 20-cv-01953-RMR, 2022 WL 897104, at *8 (D. Colo. Mar. 28, 2022) (cleaned up) (citing 20 C.F.R. § 404.1527(c)(2)).

the purpose and extent of the treatment relationship, and the examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)-(c)(5), 416.920c(c)(1)-(c)(5). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Miles v. Saul*, No. 20-cv-1456-WJM, 2021 WL 3076846, at *2-3 (D. Colo. July 21, 2021).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Thus, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Miles*, 2021 WL 3076846, at *2 (quoting *Vellone v. Saul*, No. 20-cv-00261(RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)); *see also Lenoble v. Kijakazi*, No. 22-cv-00094-MEH, 2022 WL 16855693, at *7 (D. Colo. Nov. 10, 2022) ("supportability" is the extent to which the medical source supports his or her opinion with objective medical evidence and an explanation).

Consistency, on the other hand, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Consistency thus "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."

*Miles*, 2021 WL 3076846, at *2-3 (citing 20 C.F.R. §§ 416.920c(c)(2),404.1520c(c)(2)); *see also Lenoble*, 2022 WL 16855693, at *7 ("consistency" is the extent to which the evidence from the other medical and nonmedical sources is consistent with the opinion).

The ALJ must explain his or her approach with respect to the supportability and consistency factors when considering a medical opinion: "we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id*. The ALJ is not required to expound on the remaining three factors unless two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Miles*, 2021 WL 3076846, at *3 (citing §§ 416.920c(b)(2)-(3), 404.1520c(b)(2)-(3)).

The court reviews the ALJ's evaluation of Dr. Kutz's opinions to ascertain whether the ALJ applied the correct legal standards and whether "substantial evidence supports the ALJ's decision" to find Dr. Kutz's opinion unpersuasive. *Johnston v. Kijakazi*, No. 20-cv-01366-PAB, 2022 WL 1439112, at *5 (D. Colo. May 6, 2022) (reviewing ALJ decision that found some opinions of a medical source to be persuasive, and others unpersuasive). *See also L.A.M. v. Kijakazi*, No. 21-cv-00983-NYW, 2022 WL 3139031, at *11-12 (D. Colo. Aug. 4, 2022) (reviewing ALJ's findings that two medical sources' opinions were unpersuasive and finding no reversible error because the findings were "supported by substantial evidence"). Additionally, so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v.*

*Comm'r, SSA,* No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022)[7] (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

Here, the ALJ applied the correct legal standards. The ALJ states that she considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 404.1520c and § 416.920c. ECF No. 8-3 at 146. The ALJ specified that she found Dr. Kutz's opinion unpersuasive because it was not supported by Dr. Kutz's own examination findings, and it was not consistent with medical evidence of record—including six specific entries in the medical records which the ALJ cited. *Id.* at 149. As such, the ALJ's order properly assessed the supportability and consistency of Dr. Kutz's opinion when determining and rejecting its persuasiveness, as required by 20 C.F.R. § 404.1520c(b)(2) and § 416.920c(b)(2), which are the correct legal standards. *Miles*, 2021 WL 3076846, at *3; *see also P.T. v. Comm'r of Soc. Sec.,* No. 22-cv-02926-STV, 2023 WL 8108569, at *8 (D. Colo. Nov. 17, 2023) (ruling that the court was able to "follow the [ALJ's] reasoning in conducting [its] review [of the ALJ's analysis of a medical opinion], and can determine that correct legal standards have been applied") (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

The ALJ's findings concerning Dr. Kutz's opinion are also supported by substantial

---

[7] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

evidence. The ALJ noted the lack of support in Dr. Kutz's examination report for his ultimate opinion that, in the context of a full-time job, Plaintiff would have a marked limitation in her attention and concentration. Yet, in the examination—as the ALJ correctly noted—Dr. Kutz observed that Plaintiff was only "mildly to moderately impaired" in those mental functions. ECF No. 8-3 at 149 (citing ECF No. 8-9 at 1067). Plaintiff takes issue with the ALJ's articulation because the ALJ did not also specify why she found Dr. Kutz's opinion as to her *other* mental functioning unpersuasive. But the ALJ was not required to specifically address the supportability of each of Dr. Kutz's opinions:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Importantly, the court is able to follow the ALJ's reasoning that Dr. Kutz's examination did not support his opinion that, in the context of a full-time job, Plaintiff would also have marked limitations in her persistence, pace, task completion, and social adaptation. Nothing in Dr. Kutz's report addresses Plaintiff's abilities to persist in a task, pace, or task completion. ECF No. 8-9 at 1063-67. As to social adaptation, Dr. Kutz diagnosed Plaintiff with major depressive disorder, "*mild to moderate*" in nature. And while he also diagnosed Plaintiff with PTSD, episodic panic disorder, and social anxiety disorder, he did not quantify the extent to which Plaintiff exhibited those conditions. *Id*. at 1067. Dr. Kutz noted that Plaintiff had only limited social contact— secondary to her depression—but Dr. Kutz provided no explanation as to how those facts led to his

11

conclusion that Plaintiff would have a marked limitation in social adaptation in full-time employment. Based on these omissions and inconsistencies in Dr. Kutz's report, this court is able to follow the ALJ's reasoning on the supportability factor and to apprehend the basis for his finding Dr. Kutz's opinion to be not persuasive.

This court is unpersuaded by Plaintiff's argument that the Commissioner asks this court to engage in an analysis of Dr. Kutz's report that would amount to an impermissible "post-hoc" rationalization of the ALJ's decision. *See* ECF No. 12 at 3. To be sure, the court cannot "create or adopt post-hoc rationalizations to support the ALJ's decision that are *not apparent from the ALJ's decision itself*," *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (emphasis added), but such is not the case here. Here, the court may consider the entire report from Dr. Kutz, which the ALJ discussed in her decision. Looking at the complete report is not impermissible, post-hoc rationalization; it does not "overstep our institutional role and usurp essential functions committed in the first instance to the administrative process." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 643 (10th Cir. 2018) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004)).

Plaintiff also argues that the ALJ inappropriately substituted her judgment here because Dr. Kutz's opinion concerns what limitations Plaintiff would have in a work context—not in the examination. This is incorrect. The ALJ did not substitute her opinion for Dr. Kutz's; rather, she found that Dr. Kutz had not supported his opinion because he failed to explain how he extrapolated from the limited impairments he observed in the examination to the marked impairments he opined Plaintiff would have in full-time employment.

In sum, because substantial evidence supports the ALJ's finding that Dr. Kutz's opinion was unsupported by his examination of Plaintiff, the court finds no reversible error in this finding. This in itself would be enough to affirm the ALJ's decision. But even proceeding to the ALJ's

second finding—that Dr. Kutz's opinion was also inconsistent with the medical evidence of record––this finding is likewise supported by substantial evidence.

The ALJ explained that "treatment has been limited and the claimant has had normal findings on mental status examinations, including normal mood, affect, behavior, thought content, and memory (Exhibits B1F/9; B2F/6; B13F/16; B14F/12, 18; B15F/3)." ECF No. 8-3 at 149. The court has carefully reviewed each of the medical record citations referenced by the ALJ, which memorialize medical providers' notes from examinations and appointments with Plaintiff spanning a three-year period from June 2018 to June 2021. The ALJ accurately describes these records.

Plaintiff argues that these records are only from medical appointments—not mental health appointments or mental status examinations—and that the ALJ ignored other evidence that was favorable to Plaintiff on these issues. However, the ALJ did not have to cite every page of evidence that pertains to Plaintiff's mental functioning, mental disorders, mood, or social adaptation. While the medical records overall may contain conflicting evidence about the extent to which Plaintiff suffered more pronounced mental health and mental functioning impairments than reflected in Plaintiff's RFC, this court is obliged to confine its review to the question of whether *the evidence on which the ALJ relied* was such "evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. Here, the court concludes that it was. The court has reviewed the Administrative Record and finds that the ALJ did not engage in "impermissible cherry-picking," *see, e.g.*, *Bryant*, 753 F. App'x at 641, of the medical records. And the ALJ's finding is further supported by the "prior administrative medical findings of the State agency psychological consultants," which the ALJ discussed immediately prior to finding Dr. Kutz's opinion unpersuasive. ECF No. 8-3 at 149 (explaining that those consultants found Plaintiff had moderate limitations in "interacting with others, . . . concentrating, persisting, and maintaining

pace, and . . . in adapting or managing oneself," and mild to moderate impairment in attention and concentration).

Accordingly, the ALJ's finding that Dr. Kutz's opinion was inconsistent with the medical evidence of record is supported by substantial evidence. The court finds no error here.

## CONCLUSION

For the reasons set forth above, it is ORDERED that the decision of the Commissioner is AFFIRMED. Judgment shall enter accordingly.

Dated: September 18, 2024.

BY THE COURT:

Susan Prose
United States Magistrate Judge